

179 WESTBURY AVENUE, CARLE PLACE, NEW YORK 11514 PHONE (516)334-4500 FAX (516)334-4501 WWW.SOKOLOFFSTERN.COM

BRIAN S. SOKOLOFF
BSOKOLOFF@SOKOLOFFSTERN.COM

February 1, 2021

**By ECF**
Hon. Nelson S. Román
United States District Court
300 Quarropas Street
White Plains, NY 10601

    Re:  *U.S. v. Vill. of Airmont*
        Docket No. 20 Civ. 10121 (NSR)

Your Honor:

  We represent the Defendant. We write to request a pre-motion conference in anticipation of moving to dismiss the Complaint.

  The Village of Airmont respects and supports the right of every resident to practice their faith. Every Village resident is free to pray in his or her home or anywhere in the Village, without restriction or regulation, just like any other American. Anyone can establish or attend a public place of worship in any of the Village's eleven zoning districts. Vill. Code §§ 210-12.2, 210.12.3. And any resident can even use a single-occupancy home as a regular public gathering space—a "Residential Place of Assembly" ("RPA")—for any purpose, including group worship. *Id*. § 210-12.1 That is, of course, so long as the site—its size, fire safety, ingress, egress, bathrooms, parking, etc.—can support the health, safety, and welfare of all who gather there. The Village cannot permit homes to become fire traps or other threats to human well-being.

  The Village Code strikes a balance—"to promote individual constitutional rights to freedom of religion, freedom of assembly and the protection of the health, safety and welfare of its citizens." *Id.* § 210-12.1(A). To ensure a site can safely support regular group gatherings, the Village Code gives an RPA intended for worship the same review process as all other site plan applications, but the Village *also* gives such applicants "priority in the scheduling of agenda items and hearings and in rendering of all decisions." *Id*. § 210-12.1(B)(14). This includes the placement of religious RPA applications "on the Planning Board or [Community Design Review Committee ("CDRC")] calendar *before any other applications* can be scheduled to be heard by the Planning Board or CDRC." *Id*. In Airmont, by statute, people seeking to use their home for regular congregational worship go to the front of the governmental land use review line.

  The Government challenges the RPA law—enacted in 2018 ("2018 Code")—under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging it substantially burdens, discriminates against, and unreasonably limits the religious practices of Orthodox Jews. However, the Government fails to allege the Village applied this facially neutral law to anyone, much less illegally. Instead, it relies on the allegations of people who applied under a prior iteration

of the Code (one of whom the Village *approved*) but who abandoned the process before the 2018 Code even took effect and who have taken no action to implicate or invoke the 2018 Code (or to apply for a variance). The Government's claims of religious burden and discrimination are pure conjecture, and the Court should dismiss them.

## Factual Background

In 1996, at the Government's request, a federal court ordered the Village to create a use category called "Residential Place of Worship" ("RPW"). ¶ 13; *see also LeBlanc-Sternberg v. Fletcher*, 922 F. Supp. 959, 964 (S.D.N.Y. 1996). The court ordered the Village to define RPW as an "area located within a residence that is used for the conducting of religious services" and to permit the use "by right on any day in all residential zones." ¶ 13. On April 29, 1996, the court amended its order "to clarify that there is not an absolute right to operate a [RPW]." *Vill. of Airmont v. U.S.*, No. 98 CIV. 3801 (CM), 1999 WL 123384, at *1 (S.D.N.Y. Feb. 5, 1999).

The Village was concerned the broad language "requested by the government … could completely eviscerate its zoning code." *LeBlanc-Sternberg*, 922 F. Supp. at 964. This concern quickly materialized; a resident tried to use the RPW provision to skirt state safety and local zoning regulations, to build a "16,580 square foot" synagogue on a residential lot in a residential zone. *Vill. of Airmont v. U.S.*, 1999 WL 123384, at *1. "[A] building of this size, if denominated a place of public accommodation (as most houses of worship and other public places are), would be subject to numerous construction, safety and occupancy standards under State law, as well as to site plan approval under Airmont's existing Zoning Code. However, if this edifice in fact qualifie[d] as a [RPW], then it [was] possible that the Building Inspector must issue a permit for its construction subject only to the much less stringent rules that apply to residential construction." *Id*.

In 1998, the Village returned to court, asking to modify its Code to address the health and safety implications of the 1996 Order. *See Vill. of Airmont v. U.S.*, No. 98 Civ. 3801 (CM). The Village proposed requiring RPW's to comply with "the applicable provisions of the New York State Code of Rules and Regulations and the Uniform Fire Prevention and Building Code" and to conform to the "area and bulk requirements applicable to a single family residence in the district in which the building or structure is situated." *Vill. of Airmont v. U.S.*, 1999 WL 123384, at *2. In 2000, the Government and the Village signed a stipulation setting forth proposed amendments to the RPW law that the Village would apply to a pending application as a "test case." Ex. A. The court so-ordered the stipulation. *See U.S. v. Vill. of Airmont*, 91 Civ. 8453, ECF No. 31.

In 2005, the Government sued the Village, alleging the Village Code prohibited the operation of a Hasidic religious boarding school. ¶ 15. Six years later, the parties settled and entered into a consent decree, ¶ 16, which included "no admission of liability." Ex. B at 3, § I. In 2007—while in active litigation with the Government—the Village enacted amendments to its Code, ¶ 29, which implemented, in sum and substance, the proposed procedures of the 2000 stipulation. Three people who applied for RPW approval under the 2007 amendment (one of whom the Village *approved*) have sued the Village ("*Ridnik* Plaintiffs"). ¶ 52 (*citing Cong. of Ridnik, et al. v. Vill. of Airmont*, et al. No 18 Civ. 11533 (NSR). Their claims are meritless and not justiciable.

In 2017, the Village enacted a moratorium on development while it considered updating its comprehensive plan and zoning code. ¶ 33. The Government claims—with no plausible support—the moratorium was motivated by anti-Semitic animus. ¶ 34. But it does not—and cannot—identify any Orthodox Jewish Village resident affected by the moratorium, which was not applied to any *Ridnik* Plaintiff or to the religious school referenced in the Complaint (¶ 53).

In 2018, the Village amended its Code. ¶ 36. The Government claims several facially neutral RPA provisions of the 2018 Code infringe on religious exercise. ¶¶ 38–42. But again, it identifies no instance in which the Village applied these provisions to any application. Misreading the 2018 Code, the Government also falsely alleges it "banned 'public baths.'" ¶ 43. The Code says only that "Facilities such as *public* baths … shall be deemed separate uses and are not permitted in an accessory residential place of assembly." 210-21.1(B)(5). This is no Village-wide ban.

### The Complaint Fails as a Matter of Law

The Government's RLUIPA claims are speculative and fail as a matter of law on several grounds. The Complaint identifies no provision of the 2018 Code that *on its face* substantially burdens, discriminates against, or limits the religious exercise of anyone. The Government does not plausibly allege the Village enacted 2018 Code with discriminatory intent, much less applied it with discriminatory effect. And its allegations of the *potential* effect of these provisions are pure conjecture, based only on the allegations of three residents and the owner of a religious school[1] who themselves lack standing to challenge the 2018 Code because they never applied under it. With no plausible allegations as to the actual impact of the 2018 Code, the Government improperly attempts to use its general "enforcement" authority under RLUIPA to ask this Court for an advisory opinion. *See, e.g., Sierra Club v. Morton*, 405 U.S. 727, 732, (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions."). RLUIPA "does not confer on the Government far-reaching regulatory or rulemaking powers." *U.S. v. Cty. of Culpeper, Virginia*, No. 3:16-CV-00083, 2017 WL 3835601, at *6 (W.D. Va. Sept. 1, 2017). Rather, "[t]he substantive protections of RLUIPA concern themselves with specific violations of rights held by particular people or religious groups." *Id.* "The Government cannot say how it could … 'enforce' these underlying rights without reference to a particularized event or events that allegedly violated them." *Id.*

---

[1] The Government falsely claims the Village applied the 2018 Code to prevent "the approval of a land use application by an Orthodox Jewish Congregation to expand a religious school." ¶ 53 (citing *Central UTA of Monsey, et al., v. Vill. of Airmont, et al.*, No. 18 Civ. 11103 (VB). However, the court dismissed all claims about attempts to build new school buildings because Central UTA *never formally applied* for approval. *Cent. UTA of Monsey v. Vill. of Airmont, New York*, No. 18 CV 11103 (VB), 2020 WL 377706, at *10 (S.D.N.Y. Jan. 23, 2020). Moreover, the plaintiffs in that case have withdrawn all claims against the Village. *See* No. 18 Civ. 11103, ECF Nos. 186 & 187.

SOKOLOFF STERN LLP

Thank you for your consideration of this matter.

Respectfully submitted,
SOKOLOFF STERN LLP

Brian S. Sokoloff

cc: All parties by ECF