UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

-v-

VILLAGE OF AIRMONT,

                Defendant.

No. 20 Civ. 10121 (NSR)

## **DECLARATION OF JOEL S. RUSSELL**

JOEL S. RUSSELL, pursuant to the provisions of 28 U.S.C. § 1746, declares as follows:

1. I am an attorney and urban planner with a land use and planning consulting practice that advises local governments, regional agencies, landowners, and other organizations on zoning issues and the drafting of zoning ordinances, codes, and other land use regulations, as well as on related land conservation and public policy issues. I have represented applicants before Planning Boards, Zoning Boards, and Town and Village Boards and I also have provided legal and professional planning advice to the same kinds of municipal Boards. I respectfully submit this declaration in support of the motion by the United States for a preliminary injunction to enjoin the Village of Airmont from implementation and enforcement of provisions of its Zoning Code that frustrate the free exercise of religion by Orthodox Jewish residents within their homes.

2. In addition to my over 33 years of experience assisting a wide range of clients, both public and private, I have previously taught graduate courses on land use planning and have served in a number of executive and other capacities for land-use organizations in New York

State, including the Dutchess Land Conservancy, Scenic Hudson, and the Garrison Institute. A copy of my resume is attached as Exhibit A.

3. My primary area of expertise is the drafting and revision of zoning codes for rural, urban, exurban, and suburban communities. I have drafted all or a portion of zoning codes and land use laws for more than 60 communities, of which 39 have been adopted, including the communities of Gardiner, Goshen, Philipstown, Beacon, Dover, Amenia, Poughkeepsie, Lloyd, and Shawangunk, all in New York. A full list of the land use codes that I have either drafted in their entirety or revised in part is attached as Exhibit B. My practice is national, from California to Maine, with a focus on New York, Massachusetts, and the northeastern United States. I have published extensively about issues involving zoning and comprehensive planning in New York State and lectured on the same subjects throughout the United States.

4. As an attorney or consultant to landowners, developers, and municipalities, I have assisted applicants for development projects in the towns of Gardiner and New Paltz, New York, as well as in several towns in Massachusetts. I have represented municipalities in the review of applications for development projects in the towns of Goshen, Dover, Amenia, Washington, Philipstown, Westport, Skaneateles, and the Village of Hempstead, all in New York, as well as in several municipalities in other states.

5. I am a member of the Bar in New York, Massachusetts, and Connecticut.

6. I have been asked to review the provisions of the Airmont Zoning Code and other local laws relating to residential places of worship in the current and previous versions of the Zoning Code, and to provide my opinion as to how these provisions compare with my knowledge of common and typical practices and principles in zoning, planning, and land use,

particularly in New York. To do so, I have relied upon my knowledge and experience consulting with numerous municipal clients on drafting and administering zoning code provisions.

7.      Under the 2018 Zoning Code, Airmont requires any homeowner who wishes to use part of his or her residence for "religious activities" more than three times per month to obtain a special use permit under Section 210-12.1, entitled "Residential Places of Assembly" ("RPA"). As an initial matter, the RPA is a novel zoning use category not found in any other zoning code I have ever seen. An RPA is defined as follows: "An accessory area within a one-family detached residence, not to exceed 1,400 square feet or 30% of the gross floor area of the residence, whichever is lesser, that is used by organizations or loose affiliations of likeminded people to conduct civic, social or religious activities, or organizational functions more than three (3) times per month." (Section 210-12.1B(1) sets the maximum size of an RPA at 40% of the gross floor area of the residence, in apparent contradiction to the definition.) Based on this definition, I cannot identify any common land use or use for a home for which this category would apply other than for home-based religious worship. Renovations and enlargements of detached homes are common to accommodate home-based professional or other commercial uses, but such uses are typically governed by provisions for home occupations, home professional offices, and similar provisions commonly found in zoning codes. In my experience, the regulation of places of worship, whether in detached facilities or within a residence, is normally done through a special zoning category for religious uses, with regulatory review limited to considerations of public health and safety.

8.      Unlike a use allowed "as of right," the requirement of a special use permit treats a proposed use as allowable only if an applicant can meet criteria in the zoning code that are designed to minimize impacts on the surrounding neighborhood. The applicant must prove that

the proposal satisfies all of the requirements in the zoning and the municipality must hold a public hearing on the proposal. If the proposed special permit use does not satisfy the criteria, it can be denied. In my experience, relatively few communities require a special use permit for religious uses, and those that do limit the scope of review to issues relating strictly to public health and safety. In fact, in some states, such as Massachusetts, it is unlawful to require a special use permit for any religious use. Most municipalities allow religious uses, even large-scale ones, as of right in all zoning districts, including those that are zoned exclusively for single-family residential use. Most municipalities regulate religious uses to the minimum extent necessary to protect public health and safety, so it is rare to see a special permit requirement for any religious use, and I have never encountered a zoning code that applies special use permit procedures to a small-scale renovation of a residence for a religious accessory use.

9. Under typical zoning practice, a use permitted "as of right" does not require a special use permit, but it can still be subject to some review by a municipality. There is a continuum of regulatory review processes in most zoning codes, ranging from very elaborate and rigorous to very streamlined, with virtually no review at all. The most elaborate forms of review require a special use permit and/or a variance, and the least elaborate do not require any municipal review. However, most as of right uses do undergo some level of municipal review. If construction is involved, a building permit and certificate of occupancy are normally required in order to commence the use. Whether or not there is construction, as of right uses may also be subject to site plan review, which is toward the middle of the review continuum, more rigorous than simply granting a building permit, but much less elaborate than a special permit.

10. Within the realm of site plan review, some municipalities distinguish between "major" and "minor" site plan review, based on the scale and likely impact of the proposal. Some

zoning codes have a procedure for "minor site plan" approval, involving small-scale uses with little or no impact. Minor site plan approval provisions are generally adopted in order to encourage these small-scale uses by minimizing burdens on them. Minor site plan review processes apply to as of right uses and have minimal submission requirements tailored to the actual impacts of the proposed use. Such approval processes have streamlined procedures so that a decision can be made after one or two meetings and they involve review by only one board or administrative official. Their approval criteria are typically limited to considerations of health and safety. I have drafted such provisions, which have been adopted and used successfully by many of my client municipalities, including most of those cited in Paragraph 3 above. If a religious accessory use of a residence were to be regulated at all (many communities would consider this to be an accessory use allowed by right requiring no review other than a building permit), most municipalities would do so using a minor site plan review procedure if they have it as an option in their zoning code. Airmont does not have such a procedure in its 2018 Code.

11. Airmont's prior zoning codes from 1997 and 2007 allowed home synagogues (called "Residential Places of Worship") ("RPW") as of right in all residential zoning districts. Under the 2007 Code, Airmont applied an expedited site plan review for RPWs under 1,400 square feet, a form of minor site plan review. These two earlier approaches are closer to what one would find in customary zoning practice, as described above.

12. Many zoning codes do require site plan review for religious uses. As stated above, site plan review can occur either in the context of a special use permit proceeding or in connection with a use allowed as of right. The purpose of site plan review is to ensure the protection of public health and safety, so it typically covers limited issues such as traffic, parking, drainage, water supply, and sewage disposal. Under customary zoning practice,

municipalities cannot use site plan review to deny an of-right use, only to set the minimum conditions on it necessary to protect public health and safety. Site plan review of secular uses sometimes examines aesthetic issues such as landscaping, architecture, and lighting, but municipalities typically do not apply these requirements to religious uses because they do not affect public health or safety. Site plan review focuses on the exterior impact of the proposal and not on the use of interior spaces in a building, since these usually have no bearing on public health and safety as regulated through zoning. Legitimate safety issues that relate to interior spaces, such as occupancy limits, fire safety, plumbing, electricity, and construction techniques, are typically not regulated by zoning. Rather, they are regulated by building and related safety codes.

13. Section 210-12.1(B) of the 2018 Zoning Code imposes a number of restrictions on how a homeowner may use his or her property should it fall under the category of RPA. These restrictions include the following:

- "Non-members" are not allowed to use the space for any purpose,
- Outdoor space may only be used for parking, passive recreation, a small jungle gym for children, benches, and picnic tables. As I understand the effect of such a use prohibition, this means that outdoor structures commonly used in Jewish practice, such as a sukkah, are prohibited. It also means that other outdoor uses, such as badminton, croquet, playing catch, grilling food, using a swimming pool, and similar innocuous uses of outdoor spaces typically allowed by land use codes on private property are prohibited.

In my experience, these are highly unusual regulations of residential uses, and I have not encountered such restrictions in any municipal zoning code. For instance, I have

never seen and cannot imagine that I ever would come across a regulation of a home-based accessory use that triggers a prohibition on barbecuing or playing outdoor games on the same property where the accessory use occurs.

14. The 2018 Zoning Code imposes procedural requirements for establishing an RPA that are in my experience uncommon in connection with an accessory use, and almost never found when that use is religious. In addition to requiring a special permit, which triggers extensive evidentiary requirements to determine compliance with standards contained in § 210-97 of the Zoning Law, § 210.12.1 also requires Site Plan Review, which is regulated in two separate sections of the 2018 Village Code, Article IX of the Zoning Code entitled "Site Development Plan Review," and Chapter 164, entitled "Site Development Plan Regulations." In order to obtain a special permit for an RPA, an applicant must satisfy the procedural requirements for a special permit in §§ 210-89 through 210-93, the special permit standards in § 210-97, the site plan review procedures in § 210-74, and the procedural and substantive requirements for Site Development Plan approval in Chapter 164 of the Village Code. This site development plan review process described above was also applied under the 2007 Code for RPWs over 1,400 square feet in size. These procedural and substantive requirements are cost and time intensive and are more typical of what one would find for a large-scale commercial, residential, industrial, institutional, or mixed-use development with significant impacts, such as a shopping center, apartment complex, hospital, or manufacturing plant. In ordinary zoning practice, these procedural requirements would be considered unreasonably extensive and disproportionate to the possible impacts of the type of land use at issue. These requirements of the Airmont Zoning Code are far more complex and elaborate than requirements typically

imposed for something with the limited foreseeable impact of a renovation of a home for an accessory use.

15. In some communities, bodies such as the Community Design Review Committee ("CDRC") are used to streamline and expedite project review and approval by using informal procedures designed to ensure that the review focuses on important issues, does not dwell on issues of little or no significance, and expedites the review process. Where bodies such as the CDRC exist, they typically are used to advise reviewing boards on complex, technical issues involving large-scale projects, not to delve into minute details of small-scale accessory uses.

16. I have reviewed the minutes of meetings of the CDRC and the Planning Board that the Village of Airmont appended to its motion to dismiss in a matter related to this one. It is evident from these minutes that the CDRC demanded that applicants submit information that is not relevant to the regulation of a religious use, such as landscaping plans, tree species, and interior furniture layouts. In my experience, it is not normal or acceptable practice for municipalities to require information that has no bearing on whether or not an application should be approved. This is especially true when a site plan review is supposed to occur on an expedited basis.

17. In my experience, imposing these kinds of burdensome requirements, which are out of proportion to the type and scale of the land use being regulated, is a well-established technique that some municipalities use to discourage a disfavored land use or even to establish a de facto prohibition of the use.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Northampton, Massachusetts
February 12, 2021

_____
Joel Russell